IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>REPUBLIC STEEL,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO.: 5:22-cv-2163<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, the United States of America, by and through its attorneys, by authority of the Attorney General of the United States and acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges the following:

### NATURE OF ACTION

1. This is a civil action for injunctive relief and civil penalties for violations of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q, at a steel manufacturing facility owned and operated by Republic Steel ("Defendant") in Canton, Ohio.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355, and CAA Section 113(b), 42 U.S.C. § 7413(b).

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395 and CAA Section 113(b), 42 U.S.C. § 7413(b) because the Defendant resides and is found in this District and because the violations occurred within this District.

### NOTICES

4. Pursuant to CAA Section 113(a)(1), 42 U.S.C. § 7413(a)(1), EPA notified Defendant and the State of Ohio of the violations of the Ohio State Implementation Plan alleged in this Complaint more than 30 days prior to its filing.

5. The United States has provided notice of the commencement of this action to the State of Ohio as required by CAA Section 113(b), 42 U.S.C. § 7413(b).

## DEFENDANT

6. Defendant Republic Steel is a corporation organized under the laws of the State of Delaware and registered to do business in the State of Ohio.

7. Defendant manufactures Special Bar Quality steel bars and steel rolls at its steel manufacturing facility located at 2633 8th Street NE, Canton, Stark County, Ohio ("Facility").

8. Republic Steel is a "person" within the meaning of CAA Sections 113(b) and 302(e), 42 U.S.C. §§ 7413(b) and 7602(e).

## BACKGROUND

9. Congress enacted the CAA "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

### National Ambient Air Quality Standards ("NAAQS")

10. Section 108(a) of the CAA, 42 U.S.C. § 7408(a), requires EPA to list, and issue air quality criteria for, each air pollutant, the emissions of which may endanger public health or welfare and the presence of which results from numerous or diverse mobile or stationary sources.

11. Section 109(a) of the CAA, 42 U.S.C. § 7409, requires EPA to promulgate regulations establishing primary and secondary NAAQS for those air pollutants for which air quality criteria have been issued pursuant to Section 108 of the CAA. Under Section 109(b) of the CAA, 42 U.S.C. § 7409(b), the primary NAAQS are to be adequate to protect the public

health with an adequate margin of safety, and the secondary NAAQS are to be adequate to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

12. Pursuant to Sections 108 and 109 of the CAA, 42 U.S.C. §§ 7408 and 7409, EPA listed and issued air quality criteria and NAAQS for, inter alia, lead. The primary and secondary NAAQS for lead is 0.15 micrograms per cubic meter average over a three-month period. This standard was established to provide public health protection, including the health of sensitive populations such as asthmatics, children, and the elderly. 40 C.F.R. Part 50.

13. Pursuant to Section 107(d) of the CAA, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is deemed an "attainment" area. An area that does not meet the NAAQS for a particular pollutant is deemed a "non-attainment" area. Air quality designations for states are approved by EPA and can be found at 40 C.F.R. Part 81.

14. Section 110 of the CAA, 42 U.S.C. § 7410, requires each State to adopt and submit to EPA for approval a plan that provides for the attainment and maintenance of the NAAQS in each air quality control region within each state. This plan is known as a State Implementation Plan ("SIP").

15. Pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, states adopt and submit to EPA for approval various rules for the attainment and maintenance of the NAAQS. After such provisions are approved by EPA, these provisions constitute a state's "applicable implementation plan," within the meaning of Sections 113(b) and 302(q) of the CAA, 42 U.S.C. §§ 7413(b) and 7602(q), and are considered the SIP. These SIPs are enforceable by the respective states in which

they are adopted and, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), by the United States.

16. The CAA requires that facilities that emit criteria air pollutants comply with emissions standards and limitations on a continuous basis. See 42 U.S.C. §7602(k) (defining an emission limitation or emission standard as "a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis.")

17. The SIPs serve two main purposes: to demonstrate that the state has the basic air quality management program components in place to implement a new or revised NAAQS; and to identify the emissions control requirements the state will rely upon to attain and/or maintain the primary and secondary NAAQS.

**Ohio State Implementation Plan and Defendant's Permit to Install**

18. On May 27, 1994, EPA approved Ohio Administrative Code ("Ohio Admin. Code") 3745-17-01 and Ohio Admin. Code 3745-17-08 as part of the SIP for Ohio. 59 Fed. Reg. 27464 (May 27, 1994). On October 26, 2010, EPA approved revisions to Ohio Admin. Code 3745-17-01 and Ohio Admin. Code 3745-17-08 as part of the Ohio SIP. 75 Fed. Reg. 65567 (Oct. 26, 2010).

19. On January 22, 2003, EPA approved Ohio Admin. Code 3745-31-05 as part of the SIP for Ohio. 68 Fed. Reg. 2909, 2911 (Jan. 22, 2003).

20. Ohio Admin. Code 3745-31-05 allows the Ohio EPA to issue permits to install containing terms and conditions to ensure achievement and maintenance of applicable air quality standards (each such permit being a "PTI").

## Enforcement Provisions

21. Pursuant to CAA Section 113(a)(1), 42 U.S.C. § 7413(a)(1), the EPA may bring a civil action in accordance with CAA Section 113(b), 42 U.S.C. § 7413(b), whenever, on the basis of any information available to the EPA, the EPA finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, an applicable SIP or a permit issued pursuant to an applicable SIP.

22. The United States Department of Justice has authority to bring this action on behalf of the Administrator of EPA under 28 U.S.C. §§ 516 and 519 and CAA Section 305(a), 42 U.S.C. § 7605(a).

23. Section 113(b) of the CAA authorizes civil penalties of up to $25,000 per day for each violation of the CAA. The Civil Penalties Inflation Act of 1990, 28 U.S.C. § 2461 et seq., as amended by the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701 et seq., as amended by the Federal Civil Penalties Inflation Adjustment Act Improvement Act of 2015, 28 U.S.C. § 2461 note, Pub. L. 114 74, requires EPA to periodically adjust its civil penalties for inflation. Pursuant to those statutory mandates, EPA has adopted and revised regulations entitled "Adjustment of Civil Monetary Penalties for Inflation," 40 C.F.R. Part 19, to upwardly adjust the maximum civil penalty under the CAA. 40 C.F.R. Part 19 authorizes the Administrator of EPA to assess a civil penalty of up to $109,024 per violation for each day of violation that occurred after November 2, 2015, and assessed after January 12, 2022. 87 Fed. Reg. 1676, 1679 (Jan. 12, 2022). Pursuant to those same statutory mandates, EPA may make and codify further inflation-based adjustments to the statutory maximum penalty that would apply to future days of violation.

**Defendant's Canton Facility**

<u>The PTI for Republic's Flexcast Vacuum Tank Degasser</u>

24.     The Facility contains, among other emission sources, the Flexcast Vacuum Tank Degasser ("VTD").

25.     Effective on December 10, 2004, and pursuant to Ohio Admin. Code Chapters 3745-31 and 3745-35, Ohio EPA issued PTI No. 15-01578 to Republic Steel ("2004 PTI") which established conditions for the Flexcast VTD, emission unit P152.

26.     Among other requirements of the 2004 PTI, emissions from Republic Steel's Flexcast VTD are subject to the requirement to employ best available technology in the Ohio SIP at OAC Rule 3745-31-05(A)(3).

27.     The 2004 PTI establishes an emission limit of 0.09 pounds of lead per hour from the Flexcast VTD. 2004 PTI, Condition P152.III.A.I.1.

28.     The 2004 PTI required Defendant to perform an emissions test for lead and other pollutants from the Flexcast VTD within six months of startup and every five years thereafter. 2004 PTI, Conditions P152.III.E.1.a. and P152.III.E.2.a.

29.     The 2004 PTI for the Flexcast VTD states that "[t]he permittee shall develop a Parametric Monitoring and Record keeping plan in order to confirm that the condenser servicing this emissions unit is operating properly and to demonstrate continued operation at or above the overall control efficiency of the condenser. This plan shall be developed prior to the start of the lead inoculation in this emissions unit. The monitoring equipment, if required, shall be installed, calibrated, operated, and maintained in accordance with manufacturer's recommendations, instructions, and O&M manuals and consistent with good engineering practices. This plan, once approved by the Canton local air agency, shall be part of this permit." 2004 PTI, Condition P152.III.C.1.

30. The 2004 PTI states that "[t]he permittee shall perform the appropriate parametric monitoring and record keeping as identified in the approved plan established in condition C.l." 2004 PTI, Condition P152.III.C.2.

31. The 2004 PTI requires Republic Steel to submit reports of any required monitoring and recordkeeping of federally enforceable information to the appropriate Ohio EPA District Office or local air agency. 2004 PTI, Condition P152.I.A.1.c.i.

The Operation of the Flexcast VTD

32. Defendant's Flexcast line processes molten steel from an electric arc furnace. The processing includes the addition of certain alloys in a dedicated ladle metallurgical furnace ("LMF"). From the LMF, the steel is taken to a VTD where additional alloys are added, including lead. Lead is added to the steel at the VTD by adding lead wire to the steel via a small opening in the VTD enclosure. Once complete, the VTD enclosure is opened and a cover is placed on the ladle. The steel is then taken to the tundish where the ladle is tapped and the steel flows to the casting lines. Defendant first inoculated steel with lead at the Flexcast on December 12, 2006.

33. In certain circumstances, a ladle of leaded steel cannot be kept at optimal temperature prior to casting. This leaded steel that requires additional heat while waiting to be cast must first return to the VTD to "boil off" or "degas" the lead. This ladle can then return to the LMF to be taken back up to optimal temperature. After reaching the needed temperature, the ladle of steel is then returned to the VTD for additional lead to be added.

34. On September 20, 2021, EPA personnel inspected the Facility, during which they observed an inoculation of lead alloy into a ladle of molten steel at the Flexcast VTD. The ladle was removed from the VTD but could not proceed to the caster due to an equipment failure at the caster. As a result, Facility staff stated that the ladle would be returned to the VTD in order to

degas the lead. Republic Steel has performed lead degassing at the Facility's VTD on multiple additional occasions. The degassing process increases airborne lead emissions from the VTD.

General Allegations

35. Republic Steel is the "owner or operator" of the Facility within the meaning of the CAA.

36. A "stationary source" is any building, structure, facility, or installation which emits or may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

37. The Facility is a "source" and a "stationary source" as those terms are defined at Section 111(a) of the CAA, 42 U.S.C. § 7411(a). See 42 U.S.C. § 7412(a)(3).

## FIRST CLAIM FOR RELIEF
### SIP Violation: Excess Lead Emissions

38. Paragraphs 1 through 37 above are re-alleged as if fully set forth herein.

39. Since at least October 28, 2020, Republic Steel has exceeded its emission limit of 0.09 pounds of lead per hour from the Flexcast VTD whenever it performs lead degassing, in violation of Condition P152.III.A.I.1 of the 2004 PTI.

40. Unless restrained by an Order of the Court, Republic Steel's violations of its lead emission limits, as set forth in this Claim for Relief, are likely to continue.

41. As a result of the above-listed violations, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable to the United States for injunctive relief and civil penalties not to exceed the statutory maximum amounts referenced above in Paragraph 23.

## SECOND CLAIM FOR RELIEF
### Ohio SIP Violation: Failure to Perform Emissions Test

42. Paragraphs 1 through 37 above are re-alleged as if fully set forth herein.

43. Defendant has not performed an emissions test for lead or any other pollutant from the Flexcast VTD, in violation of Conditions P152.III.E.1.a. and P152.III.E.2.a. of the 2004 PTI.

44. Unless restrained by an Order of the Court, Republic Steel's violations, as set forth in this Claim for Relief, are likely to continue.

45. As a result of the above-listed violations, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable to the United States for injunctive relief and civil penalties not to exceed the statutory maximum amounts referenced above in Paragraph 23.

## THIRD CLAIM FOR RELIEF
**Ohio SIP Violation: Failure to Perform Parametric Monitoring and Recordkeeping**

46. Paragraphs 1 through 37 above are re-alleged as if fully set forth herein.

47. Between January 1, 2021, and March 31, 2021, and at various times since as detailed in its quarterly reports submitted to Ohio EPA, Defendant has failed to perform parametric monitoring and record keeping at the Flexcast VTD in violation of Condition P152.III.C.2 of the 2004 PTI.

48. Unless restrained by an Order of the Court, Republic Steel's violations, as set forth in this Claim for Relief, are likely to continue.

49. As a result of the above-listed violations, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable to the United States for injunctive relief and civil penalties not to exceed the statutory maximum amounts referenced above in Paragraph 23.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

A. Permanently enjoin Defendant from further violations of the CAA and applicable requirements established thereunder;

B. Require Defendant to obtain and comply with all necessary permits and to undertake and complete expeditiously all actions necessary to achieve and maintain compliance with the CAA and applicable requirements established thereunder;

C. Order Defendant to take other appropriate action to remedy, mitigate, and offset the harm to the public health and the environment caused by the violations of the Clean Air Act alleged above;

D. Assess a civil penalty against Defendant for violations of applicable provisions of the CAA as well as their implementing regulations and permits issued thereunder of up to the statutory maximum amounts referenced above in Paragraph 23;

E. Award Plaintiff its costs and disbursements for this action; and

F. Grant Plaintiff such other relief as the Court may deem just and proper.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

s/Samantha M. Ricci
SAMANTHA M. RICCI
Trial Attorney

Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-3856
Samantha.ricci@usdoj.gov

MICHELLE M. BAEPPLER
First Assistant United States Attorney

JACKSON J. FROLIKLONG
Assistant United States Attorney
United States Courthouse
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3818
Fax (216) 522-2404
JFroliklong@usa.doj.gov

OF COUNSEL:
MARY T. McAULIFFE
Associate Regional Counsel
United States EPA
Region V (C-14J)
77 West Jackson Blvd.
Chicago, IL 60604-3590
(312) 886-6237